DISTRICT OF OREGON
**F I L E D**
August 11, 2021
**Clerk, U.S. Bankruptcy Court**

Below is an opinion of the court.

_____
PETER C. McKITTRICK
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re:<br><br>MARTHA K. HEARD,<br><br>        Debtor. | Bankruptcy Case<br>No. 15-35564-pcm13<br><br>OPINION |

This matter came before the court on a Motion for Award of Attorney Fees and Costs (Motion) filed by the debtor (Heard). Doc. 82. For the reasons stated in this Opinion, the Motion is granted.

FACTS AND PROCEDURAL BACKGROUND

Heard filed her chapter 13 petition[1] on November 30, 2015, and the court confirmed her plan on February 2, 2016. Docs. 1, 27. With respect to the first mortgage held by JPMorgan Chase Bank, N.A. (Chase), Heard's chapter 13 plan required her to cure an arrearage, which she estimated at $3,681.98, and to maintain current payments. Doc. 13.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

Page 1 – OPINION

On June 12, 2020, Chase filed a Transfer of Claim, indicating that it had transferred the mortgage to Goldman Sachs Mortgage Company, serviced by Select Portfolio Servicing (SPS). From there, the record is unclear, but the loan apparently was transferred to U.S. Bank National Trust Association (U.S. Bank), not in its individual capacity but solely as owner trustee for Legacy Mortgage Asset Trust 2020-GS4. The mortgage is still serviced by SPS.[2]

On September 16, 2020, U.S. Bank filed a Notice of Mortgage Payment Change (Notice). See P.O.C. 5. U.S. Bank indicated that Heard's escrow payment was changing effective December 1, 2020, from $523.55 to $761.30, and attached an escrow statement showing an escrow shortage.

On December 2, 2020, Heard filed an Objection to Notice of Mortgage Payment Change (Objection) denying that there was an escrow shortage.[3] Doc. 59. Heard explained that she had made all postpetition payments towards principal, interest, escrow and fees, and that the pre-petition arrears were cured through the plan. Heard also noted that the alleged escrow shortage closely matched the escrow deficiency when Heard filed her petition and that she had subsequently cured that deficiency through the plan payments.

In response, U.S. Bank denied that it carried over a prepetition escrow shortage and indicated that "[c]reditor is further reviewing accounting records to ensure the accuracy of the escrow shortage and Notice of Mortgage Payment Change and will file any revised Notice and

---

[2] Hereinafter, any reference to U.S. Bank includes actions by its servicer, SPS, including the issuance of documents by SPS.

[3] U.S. Bank argues that Heard is not entitled to attorney fees because she failed to request fees in the Objection. Doc. 83. U.S. Bank does not cite any authority for that proposition and the court is aware of none.

Page 2 – OPINION

statement as is appropriate." Doc. 67.

The court held a hearing on December 18, 2020, where the parties reported that they were working to resolve the issue. Doc. 68. At the continued hearing on January 7, 2021, U.S. Bank indicated that the issue may lie with Chase not properly accounting for escrow payments. Heard requested that U.S. Bank provide her with a five-year accounting of payments. Docs. 69, 82-1. The court set an evidentiary hearing for February 24, 2021, with a deadline to submit exhibits by February 17, 2021. Docs. 69, 70.

On February 12, 2021, U.S. Bank's attorney emailed Heard's attorney the following: "It appears that some of the funds that should have been applied to escrow may have been applied to postpetition amounts due instead. If so, the application of funds would be reversed, such that the postpetition payment status would change." Doc. 82-1, Ex. 3. U.S. Bank said in the email that it was still in the process of reviewing its accounting records, but that it believed the matter would be resolved before the evidentiary hearing. Doc. 82-1, Ex. 3.

Heard did not receive an accurate accounting correcting the error before the deadline to file trial exhibits and thus was obligated to prepare for the scheduled evidentiary hearing. Doc. 82.

On February 23, 2021, Heard informed the court that the Objection had been resolved but that she would be moving separately for attorney fees. Doc. 77.

On March 16, 2021, U.S. Bank filed an Amended Notice of Mortgage Payment Change (Amended Notice) that revised the escrow payment amount from $523.55 to $519.82. I find that the Notice indicating the escrow payments were increasing from $523.55 to $761.30 was an error. This error is confirmed by the Amended Notice.

Page 3 – OPINION

Heard asserts that she incurred $18,116.34 in attorney fees and $24.39 in costs to resolve the incorrect Notice and moves for attorney fees under Rule 3002.1(i).[4]  Doc. 82.

ANALYSIS

The court has jurisdiction over the Motion under 28 U.S.C. §§ 1334 and 157.  This Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O).

Under the Federal Rules of Bankruptcy Procedure (Rules), a creditor must file and serve on the debtor, debtor's counsel, and the trustee, a notice of any change in the payment amount in a chapter 13 case in which a creditor's claim is secured by a security interest in the debtor's principal residence and for which the plan provides that the debtor will make contractual installment payments.  Rule 3002.1.  Failure to provide the information required in Rule 3002.1(a) may result in sanctions.  Rule 3002.1(i).

In an unpublished letter decision, another judge of this court ruled that it is a violation of Rule 3002.1(a) to provide debtors with inaccurate information in a notice of payment change.  In re Tollstrup, 2018 WL 1384378, at *3 (Bankr. D. Or. March 16, 2018).  The court reasoned that "the provision of inaccurate information is equivalent to a failure to provide information."  Id.  In Tollstrup, the court noted that the Rule's purpose is to "aid in implementation of section 1322(b)(5), which permits a chapter 13 debtor to cure a default and maintain payments of a home mortgage over the course of the debtor's

---

[4] As an alternative argument, Heard contends that she is entitled to attorney fees as the prevailing party under ORS 20.096.  Because I find that Heard is entitled to fees under Rule 3002.1(i), I will not address the merits of that argument.

Page 4 - OPINION

plan." Id. Further, proper notice provides the debtor an opportunity to challenge the validity of any changes. Id. at *4.

At least one other court has concluded that providing inaccurate information is not a violation of Rule 3002.1(a). See In re Trevino, 535 B.R. 110, 131 (Bankr. S.D. Tex. 2015)(concluding that Rule 3002.1(i) provides relief for a lack of notice, but not for incorrect notice). Trevino provides little analysis and I find the reasoning in Tollstrup to be more persuasive. An inaccurate notice of payment change violates Rule 3002.1(a).

When there has been a violation of Rule 3002.1, the court has discretion to award attorney fees. Rule 3002.1(i). The Rule provides that after notice and hearing, the court may "award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure." Here, the court held a hearing on May 27, 2021, at which it indicated that the Notice was inaccurate and set deadlines for Heard's motion for attorney fees and U.S. Bank's response.

Heard is entitled to an award of attorney fees under Rule 3002.1(i). The court reviews attorney fees for reasonableness, and in the context of Rule 3002.1(i), there must be a causal connection between the fees incurred and the creditor's failure to comply with Rule 3002.1. As explained in Tollstrup, when an award of attorney fees is a statutory sanction, it must be compensatory rather than punitive in nature. Goodyear Tire & Rubber Co. v. Haeger, 137 S. Ct. 1178, 1186-87 (2017).[5] "In other words, the fee award may go no further than to redress the

---

[5] As a matter of first impression, a recent Second Circuit case determined that punitive sanctions were not an available remedy under Rule 3002.1. In re Gravel, 2021 WL 3277211, No. 20-1-bk, (2d Cir. August 2, 2021). Because this court is only awarding attorney fees that were caused by the creditor's inaccurate notice under Rule 3002.1(a), In re Gravel, does not affect this court's ruling.

Page 5 – OPINION

wronged party 'for losses sustained'; it may not impose an additional amount as punishment for the sanctioned party's misbehavior." Id. at 1186. This limitation on the court's discretion is reflected by the causal connection requirement in Rule 3002.1(i).

U.S. Bank complains that Heard is seeking $18,116.34 in attorney fees to resolve the disputed $3,083.63 escrow shortage. Doc. 83. The dispute was due to U.S. Bank's inaccurate records and reporting and the amount disputed is no small amount to most chapter 13 debtors who must remain current on their mortgage and make plan payments to the trustee.

Heard's attorneys attempted to resolve the issue without litigation. Colleen Lowry, one of Heard's attorney, provided a detailed declaration describing her repeated attempts to resolve the escrow discrepancy. Doc. 82-1, Ex. 1. U.S. Bank filed the inaccurate Notice on September 16, 2020 but did not admit that the escrow shortage was likely due to a misapplication of funds until February 12, 2021. The matter was not reported to the court as settled until February 23, 2021, which was one day before the scheduled evidentiary hearing. Heard thus was required to prepare her exhibits and witness list for the court. Doc. 77. Once U.S. Bank determined that the escrow shortage was in error, the parties settled the matter but could not agree on the issue of fees, thus necessitating the Motion.

Additionally, it was unreasonably difficult for Heard to get a five-year payment ledger from U.S. Bank. U.S. Bank represented to the court at a hearing on January 7, 2021, that it would provide the debtor with an accounting for the past five years. Doc. 69. Heard did not receive a satisfactory accounting until the end of April 2021. Doc. 82. The delay was inexcusable and caused Heard to incur additional attorney

fees.[6]

The reasonableness of attorney fees is determined under the "lodestar" calculation.  In re Parreira, 464 B.R. 410, 416 (Bankr. E.D. Cal. 2012); In re Yermakov, 718 F.2d 1465, 1471 (9th Cir. 1983).  That calculation requires the bankruptcy court to multiply the number of hours reasonably expended by a reasonable hourly rate.  E.g., In re Robertson Cos., Inc., 123 B.R. 616, 618 (Bankr. D. N.D. 1990).  In determining the reasonable hourly rate, the court begins with the "prevailing market rates in the relevant community."  Blum v. Stenson, 465 U.S. 886, 895 (1984).

In 2020, Ann Chapman billed $415.00 per hour and Colleen Lowry billed $350.00 per hour.  Doc. 82-1, Ex. 1.  In 2021, Ann Chapman billed $425.00 per hour, Chris Coyle billed $405.00 per hour, and Colleen Lowry billed $365.00 per hour.  Doc. 82-1, Ex. 1.  U.S. Bank noted that the rates increased during the pendency of this matter.  Doc. 83.  I find that those are the prevailing rates for Portland counsel with similar experience and expertise in chapter 13 bankruptcies and the increase in rates in 2021 was reasonable.

I reject U.S. Bank's request to limit Heard's attorney fees to those incurred before February 17 or 23, or March 16, 2021.  U.S. Bank argues that on those three dates, the court can find that the issue regarding the Notice was resolved because the matter was reported as settled and U.S. Bank filed its Amended Notice.  Doc. 83.  Heard moved

---

[6] As one commentator has explained, the importance for a debtor's attorney to get "a *complete* loan history from the mortgage holder or servicer as part of any 'determination' under Bankruptcy Rule 3002.1" cannot be overstated.  Keith M. Lundin, LUNDIN ON CHAPTER 13, § 131.3 at ¶ 165.  A complete loan history is essential because "[o]therwise any inappropriate charges before or after the first date on the incomplete history will be permanently embedded in the loan."  Id.

Page 7 – OPINION

under Rule 3002.1(i), which allows a debtor to request attorney fees that are caused by a creditor's failure to provide accurate information. But for U.S. Bank's inaccurate Notice, the requested fees, including those attributable to time spent preparing the Motion, would not have been incurred.

I also reject U.S. Bank's request to disallow attorney fees that were incurred for a reaffirmation hearing and objection to discharge on the basis that those fees related to other matters. The time spent on the reaffirmation hearing and objection to discharge were caused by the inaccurate Notice. The reaffirmation hearing concerned a reaffirmation agreement between Heard and her counsel. At the hearing, the court did not approve the reaffirmation agreement because Heard expected to incur more fees because of U.S. Bank's inaccurate Notice. Doc. 55. Further, the firm did not include any time spent preparing, or otherwise seeking approval of, the reaffirmation agreement. Shortly after the reaffirmation hearing, Heard filed a Precautionary Objection to Entry of Discharge stating that, she wanted to resolve the dispute over the inaccurate Notice before she received her discharge. Doc. 62. Thus, I find that there was a causal connection between those fees incurred and U.S. Bank's inaccurate Notice, and that the fees were reasonable.

U.S. Bank next argues that Heard's attorneys billed for intra-office communications resulting in redundant and unnecessary time entries. Although there are several interoffice conferences between Chapman and Lowry, and Coyle and Lowry, only one timekeeper billed for each of those conferences. Therefore, the court will allow those charges.

I also completed an independent review of the firm's time records. Except for the adjustments below, I find the time spent was reasonable

Page 8 – OPINION

and appropriate under the circumstances. The Motion prepared by the firm is thorough. It includes citations to relevant case law, and an exhaustive recitation of the facts in both the Motion itself and in an accompanying declaration. The firm gave U.S. Bank an opportunity to pay the fees incurred before filing the Motion and made at least one settlement offer.

There are, however, a few time entries I will not allow. First, the late involvement of Coyle added expense to the completion of the Motion. With the experience of Chapman and the in-depth involvement of Lowry, there was no need to introduce a third attorney into the case. Although Coyle bills at a slightly lower hourly rate than Chapman, additional time was incurred because of Coyle's previous lack of familiarity with the case. For that reason, I will reduce the fee award by $810.00. In addition, I find that some of the time entries by Chapman on 11/23/20, 12/4/20, 1/7/20 and 3/17/21 are either redundant or not related to this dispute, and I will further reduce the award by $186.75. Therefore, the total disallowed amount is $996.75, and the allowed amount is $17,119.59. As requested, I will allow the reasonable costs of $24.39.

Counsel for Heard shall submit a judgment consistent with this Opinion.

###